UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CHRISTA DIAS,                      :
                                   :
          Plaintiff,               :      NO:  1:11-CV-00251
                                   :
     v.                            :
                                   :      **OPINION AND ORDER**
ARCHDIOCESE OF CINCINNATI,         :
et al.,                            :
                                   :
          Defendants.              :


          This matter is before the Court on the Parties' Cross

Motions: Defendants' Motion for Summary Judgment (doc. 53),

Plaintiff's Response (doc. 61), and Defendants' Reply (doc. 66);

Plaintiff's Motion for Partial Summary Judgment (doc. 54),

Defendants' Response (doc. 59), and Plaintiff's Reply (doc. 60).

The Court held a hearing on the motions on January 23, 2013.  For

the reasons indicated herein, the Court GRANTS IN PART Defendants'

motion as to Plaintiff's contract claim, DENIES the balance of

Defendants' motion, and DENIES Plaintiff's motion.

**I.  Background**

          The Court has already reviewed the basic facts of this

case in its Order denying Defendants' motion to dismiss (doc. 18).

At the January 23, 2013 hearing, and in the briefing, the parties

expressed their agreement that there are no disputes as to the

material facts of this matter.

          Essentially this is an employment dispute.  Plaintiff was

an employee, a computer technology coordinator, at two of Defendant Archdiocese schools, Defendants Holy Family and St. Lawrence. She became pregnant through artificial insemination. She was unmarried. When she told her principal, Jennifer O'Brien, at Holy Family that she was pregnant, O'Brien made some inquiries and informed her that she would probably lose her job because she was pregnant and unmarried.

At that point, Plaintiff informed O'Brien, that, in fact, she had become pregnant not through premarital sex but through artificial insemination. Defendants then offered a second reason, stating she was terminated for being pregnant by means of artificial insemination. There is no factual dispute that Defendants offered both reasons in justification of Plaintiff's termination.

After her termination Plaintiff brought her three-Count Complaint, alleging that Defendants' actions amounted to pregnancy discrimination under federal and state law, and that Defendants breached her employment contracts without good cause (doc. 1). Defendants initially moved to dismiss the complaint, invoking the "ministerial exception" to Title VII, as well as contending Plaintiff violated a "morals clause"[1] in her contract and thus could not sue to enforce it (doc. 5). The Court denied Defendants'

---

[1]Such clause stated generally that Plaintiff would "comply with and act consistently in accordance with the stated philosophy and teaching of the Roman Catholic Church."

2

motion, finding the facts as alleged showed Plaintiff was not a minister, and in fact, that as a non-Catholic, she was not even permitted to teach Catholic doctrine (doc. 18). As such, the Court found Plaintiff had protections under state and federal law against pregnancy discrimination (Id.). However, the Court found the facts as alleged further showed a lack of "meeting of the minds" as to the contract, because the "morals clause" did not address artificial insemination, and there was a question of fact as to whether Plaintiff knew she was barred from such action (Id.).

Defendants now move for summary judgment contending under the McDonnell-Douglas burden-shifting analysis, that conceding Plaintiff has a prima facie case of pregnancy discrimination, she cannot rebut their proffered legitimate non-discriminatory justification for her termination, their morals clause (doc. 53). They further argue discovery yielded new facts that show Plaintiff should be considered a "minister" and thus the ministerial exception should apply to this case (doc. 53). Defendants further contend new facts show Plaintiff violated the contract in other ways that show as a matter of law, she has "unclean hands" so as to be unable to enforce the contract against them (Id.). Finally, Defendants argue the Archdiocese should not be a Defendant in this case because the Defendant schools "enjoy a unique level of independence from centralized Archdiocese operations," and that "[e]ach parish hires and fires employees, owns its own land and

3

generally manages its affairs" (<u>Id</u>.).

Plaintiff similarly moves for summary judgment, on her claims of pregnancy discrimination and on the Archdiocese's status as her employer (doc. 54). In her view, facts revealed in discovery in no way change the Court's determination that she was not a ministerial employee (<u>Id</u>.). Plaintiff claims it does not really matter whether the morals clause encompasses her pregnancy, because as a non-ministerial employee, her Title VII rights trump any illegal anti-pregnancy provision in a contract (<u>Id</u>.). Because there is no dispute that Defendants either terminated her for being pregnant and unwed, or being pregnant by artificial insemination, Plaintiff contends she should prevail on her pregnancy discrimination claims as a matter of law (<u>Id</u>.). Finally, Plaintiff offers an extensive analysis based on the integrated enterprise doctrine, showing the Archdiocese and the schools had interrelated operations, common management, and shared centralized control of labor relations and personnel (<u>Id</u>.).

## II. Applicable Legal Standard

Although a grant of summary judgment is not a substitute for trial, it is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; <u>see also</u>, <u>e.g.</u>,

4

Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464 (1962);
LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir.
1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and
Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir. 1992) (per
curiam).   In reviewing the instant motion, "this Court must
determine whether the evidence presents a sufficient disagreement
to require submission to a jury or whether it is so one-sided that
one party must prevail as a matter of law." Patton v. Bearden, 8
F.3d 343, 346 (6th Cir. 1993), quoting in part Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 251-252 (1986) (internal quotation marks
omitted).

The process of moving for and evaluating a motion for
summary judgment and the respective burdens it imposes upon the
movant and the non-movant are well settled.   First, "a party
seeking summary judgment ... bears the initial responsibility of
informing the district court of the basis for its motion, and
identifying those portions of [the record] which it believes
demonstrate the absence of a genuine issue of material fact [.]"
Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also
LaPointe, 8 F.3d at 378; Guarino v. Brookfield Township Trustees,
980 F.2d 399, 405 (6th Cir. 1992); Street v. J.C. Bradford & Co.,
886 F.2d 1472, 1479 (6th Cir. 1989).   The movant may do so by
merely identifying that the non-moving party lacks evidence to
support an essential element of its case.   See Barnhart v. Pickrel,

5

<u>Schaeffer & Ebeling Co., L.P.A.</u>, 12 F.3d 1382, 1389 (6th Cir. 1993).

Faced with such a motion, the non-movant, after completion of sufficient discovery, must submit evidence in support of any material element of a claim or defense at issue in the motion on which it would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. <u>See Celotex</u>, 477 U.S. at 317; <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986). As the "requirement [of the Rule] is that there be no genuine issue of <u>material</u> fact," an "alleged factual dispute between the parties" as to some ancillary matter "will not defeat an otherwise properly supported motion for summary judgment." <u>Anderson</u>, 477 U.S. at 247-248 (emphasis added); <u>see generally</u> <u>Booker v. Brown & Williamson Tobacco Co., Inc.</u>, 879 F.2d 1304, 1310 (6th Cir. 1989). Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." <u>Anderson</u>, 477 U.S. at 252; <u>see also</u> <u>Gregory v. Hunt</u>, 24 F.3d 781, 784 (6th Cir. 1994). Accordingly, the non-movant must present "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" to survive summary judgment and proceed to trial on the merits. <u>Moore v. Philip Morris Cos., Inc.</u>, 8 F.3d 335, 339-340 (6th Cir. 1993); <u>see</u>

also Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405.

Although the non-movant need not cite specific page numbers of the record in support of its claims or defenses, "the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies." Guarino, 980 F.2d at 405, quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989) (internal quotation marks omitted). In contrast, mere conclusory allegations are patently insufficient to defeat a motion for summary judgment. See McDonald v. Union Camp Corp., 898 F.2d 1155, 1162 (6th Cir. 1990). The Court must view all submitted evidence, facts, and reasonable inferences in a light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); United States v. Diebold, Inc., 369 U.S. 654 (1962). Furthermore, the district court may not weigh evidence or assess the credibility of witnesses in deciding the motion. See Adams v. Metiva, 31 F.3d 375, 378 (6th Cir. 1994).

Ultimately, the movant bears the burden of demonstrating that no material facts are in dispute. See Matsushita, 475 U.S. at 587. The fact that the non-moving party fails to respond to the motion does not lessen the burden on either the moving party or the Court to demonstrate that summary judgment is appropriate. See Guarino, 980 F.2d at 410; Carver v. Bunch, 946 F.2d 451, 454-455

7

(6th Cir. 1991).

## III.  Discussion

### A.  The Ministerial Exception and the Integrated Employer Doctrine.

As an initial matter, Defendants argued at the hearing and in their briefing that based on new discovery the Court should revisit its analysis of the ministerial exception, and also, it should find the Archdiocese is not a proper party to this litigation.  The Court rejects both arguments for the reasons raised by Plaintiff.  First, Defendants attempt to swallow up the ministerial exception by characterizing teachers generally as role models and therefore "ministers."  The Court reiterates its view that because Plaintiff, as a non-Catholic, was not permitted to teach Catholic doctrine, she cannot genuinely be considered a "minister" of the Catholic faith.  Plaintiff therefore retains her Title VII protection against pregnancy discrimination.

Second, the Court finds the Archdiocese is a proper party to this litigation.  Facts show the Archdiocese is involved in setting uniform employment contracts, performing background checks on new employees, and evaluating job performance of school employees.  The Archdiocese sets policies for the schools--and its overall relationship with the schools shows an interrelation of operations, common management, centralized control of labor relations, and that it can exercise a meaningful degree of

8

financial control over its parishes.  <u>Swallows v. Barnes & Noble</u>
<u>Book Stores, Inc.</u>, 128 F.3d 990, 993-94 (6th Cir. 1997).

**B.  Pregnancy Discrimination**

The Court therefore proceeds to the heart of the matter,
Plaintiff's pregnancy discrimination claims.  Plaintiff brings such
claims pursuant to Title VII and Ohio Revised Code Chapter 4112.[2]
Under these provisions, Plaintiffs may assert a <u>prima</u> <u>facie</u> case of
pregnancy discrimination through the presentation of either direct
or indirect evidence.  <u>Allen v. Ethicon,Inc.</u>, 919 F. Supp. 1093,
1098 (S.D. Ohio 1996), <u>Ensley-Gaines v. Runyon</u>, 100 F.3d 1220, 1224
(6th Cir. 1990).   Plaintiff contends here that she can do both,
because Defendant's stated reasons for her termination constitute
direct evidence of discrimination, and in any event, she can
establish a <u>prima</u> <u>facie</u> case through circumstantial evidence that
Defendant cannot rebut with a legitimate nondiscriminatory
justification.

Defendant responds there is no direct evidence of
discrimination because direct evidence requires no inferences to be
made so as to establish discrimination.   The Court agrees with
Defendant that inferences would be required to conclude that the

_____

[2] The Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k),
amended Title VII in 1978 so as to prohibit discrimination on the
basis of pregnancy, childbirth, or related medical conditions.
Pregnancy discrimination claims under Ohio Rev. Code § 4112.01 <u>et</u>
<u>seq</u>. are analyzed pursuant to federal case law involving 42
U.S.C. § 2000e.  <u>Soreo-Yasher v. First Office Mgmt.</u>, 926 F. Supp.
646, 649 (N.D. Ohio 1996).

justifications for termination due to being "unwed and pregnant," or "pregnant by artificial insemination," equate to "we are firing you for being pregnant."

The correct analysis in this case is through circumstantial evidence, that is, the burden-shifting model of McDonnell Douglas v. Green, 411 U.S. 792 (1973). Defendant concedes that Plaintiff can establish a prima facie case of pregnancy discrimination, such that the analysis turns on whether its proffered legitimate non-discriminatory justification for its action, its morals clause in the contract, is a pretext for pregnancy discrimination.

Defendants argued at the hearing and in their papers that because Plaintiff cannot show Defendants' reliance on the morals clause was not the real reason for her termination, they should be entitled to summary judgment in their favor. Plaintiff responds that the morals clause in this case is an illegal provision because it prohibits being unwed and pregnant and being pregnant by artificial insemination, two conditions she claims are squarely protected by Title VII.

The Court finds it appropriate to revisit the Sixth Circuit's decision in Boyd v. Harding Academy of Memphis, Inc., 88 F.3d 410, 414-15 (6th Cir. 1996), in which the court upheld the termination of a teacher at a religious school based on the school's proffered legitimate justification that it had a policy

10

against its teachers engaging in sex outside marriage. The Sixth Circuit found that so long as such a code of conduct was applied equally to both genders, it could be upheld as valid and non-pretextual. Id. The Court noted that though the defendant in Boyd used the phrase "pregnant and unwed" in conversations with the plaintiff, the real reason behind such statement, and consistent with the school's policy, was a prohibition against engaging in extramarital sex. Id. The Sixth Circuit repeated in Cline v. Catholic Diocese, 206 F.3d 651, 658 (6th Cir. 1999) that a policy against premarital sex can be upheld so long as it is enforced in a gender-neutral fashion.

In the light of Boyd and Cline the Court cannot adopt Plaintiff's view that terminating an employee for being "pregnant and unwed" automatically amounts to a violation of Title VII.[3] The morals clause in this case lacks specificity such that only an evaluation of the decision-makers' testimony can show whether their initial reason for terminating Plaintiff was simply enforcement of a policy against premarital sex. This in the Court's view is a factual determination for a jury: to answer why Defendant really terminated Plaintiff.

---

[3]Plaintiff cited Jacobs v. Martin Sweets Co., Inc., 550 F.2d 364 (6th Cir. 1977) at oral argument in support of her view, but such case noted that "Jacobs' employment was terminated because she was pregnant and unmarried-not because of her premarital sexual activity." 550 F.2d at 371. The Sixth Circuit appears to have consistently made a distinction between policies targeting sexual activity as opposed to illegal policies against pregnancy.

11

Even should a jury find Defendant initially terminated Plaintiff based on its view that she engaged in premarital sex, Plaintiff could still prevail should the jury find the policy was not enforced in a gender-neutral manner.  Taking all inferences in Plaintiff's favor, as the Court is required to do in relation to Defendants' motion, it finds a genuine issue of material fact as to whether the policy was only enforced against women.  Plaintiff's discovery has shown that only female employees of the Archdiocese have been terminated due to the "morals clause," such that a jury might conclude the proffered reason is pretextual. Cline, 206 F.3d 651, 667 (where a pregnancy alone signaled teacher engaged in premarital sex and school did not otherwise inquire of male teachers regarding premarital sex, a genuine issue is raised whether defendant only enforces its policy against pregnant female teachers, which is a form of pregnancy discrimination).

This case offers the further twist of a second proffered reason for Plaintiff's termination.  After Plaintiff informed Defendants she was pregnant through the means of artificial insemination, they responded that such means of becoming pregnant was also justification for her termination.

The Court already noted in its decision on Defendant's motion to dismiss that the Sixth Circuit suggested in Boyd that a pregnancy by artificial insemination might be viewed differently than a pregnancy due to extra-marital intercourse.  88 F.3d 410,

12

412, fn. 1.  It appears the Sixth Circuit may have been signaling that a pregnancy by artificial insemination might fall outside a policy prohibiting extra-marital intercourse.  Should that be the case, the Court nonetheless finds no reason that a policy against artificial insemination, like a policy against extra-marital sex, could be upheld so long as it would be enforced in a gender-neutral manner.  As such, the Court rejects Plaintiff's views, as expressed in her motion for summary judgment, that being terminated for being "pregnant by artificial insemination" is a per se violation of Title VII.

However, as above, the Court finds the Plaintiff has raised a genuine issue of material fact as to whether Defendant has enforced its policy as to men.  Although no men have been fired due to engaging in artificial insemination, this is no indication that male employees have or have not engaged in such a procedure.  There is admittedly a difficulty to enforcement of such a policy.  Defendant indicates its decision-makers would enforce such policy when violations were self-reported or became evident, for example, through child support orders.  The parties dispute whether a former male employee of a parish within the Archdiocese, who testified he engaged in artificial insemination without being fired, serves as evidence of disparate treatment.  In the Court's view, under these circumstances, it is a jury question to evaluate the credibility of Defendants' decision-makers as to enforcement of

13

such policy.  Should the jury conclude after hearing the testimony of the decision-makers that the policy has been enforced unequally as to men and women, they could find Defendants' reason pretext for pregnancy discrimination.

## C.  Plaintiff's Contract Claim

Defendants also move for summary judgment as to Plaintiff's contract claim.  The Court originally indicated there were factual questions relating to whether the parties ever arrived at a "meeting of the minds" as to the meaning of the "morals clause," which did not specifically prohibit artificial insemination (doc. 18).  Discovery has only confirmed that Plaintiff did not know such procedure was prohibited.  However, discovery also yielded facts that Plaintiff admitted she was in a long-term homosexual relationship during her employment, and that she kept such fact secret from Defendants as she knew Defendants would view her relationship as a violation of the morals clause.  Under such circumstances, the Court finds Plaintiff, with "unclean hands," cannot invoke a cause of action based on a contract she knew she was breaching.  A party that breaches a contract cannot scrupulously enforce the contract against the other contracting party.  Midwest Payment Systems, Inc. v. Citibank Federal Savings Bank, 801 F.Supp. 9 (S.D. Ohio, 1992).  Having concluded as such, however, the Court finds the contract issue distinct from that of Plaintiff's potential Title VII rights, and that her breach of such

14

contract in no way absolves Defendants' of any responsibility to conform to the requirements of law against pregnancy discrimination.

## IV. Conclusion

Plaintiff's counsel stated at the hearing that this is a simple case.  The Court disagrees.  There appear to be multiple layers of factual determinations appropriate for a jury.

The Court rejects Defendants' views that the ministerial exception applies to this case and that the Archdiocese is improperly named as a Defendant.  The Court further rejects Defendants' view that it is entitled to summary judgment as to Plaintiff's pregnancy discrimination claims, because a reasonable jury could find that its proffered legitimate justification for Plaintiff's termination, its policies regarding sexual activity and artificial insemination, were not applied equally as to male employees.  However, the Court similarly rejects Plaintiff's view that she is entitled to summary judgment, because she takes an expansive view of Title VII that does not comport with Sixth Circuit precedent.  Defendants' proffered reasons for her termination may be found to be legitimate, so long as a jury would find such policies were not pretext for illegal discrimination. The Defendants' position on Plaintiff's contract claim, however, is well-taken, and the Court finds summary judgment appropriate as to such claim.

Accordingly, the Court GRANTS IN PART Defendants' motion (doc. 53) as to Plaintiff's contract claim, but DENIES the balance of Defendants' motion, and DENIES Plaintiff's motion (doc. 54). The final pretrial conference shall proceed as scheduled on February 27, 2013, and the four-day trial, on an on-deck basis, on March 19, 2013.

SO ORDERED.

Dated: January 30, 2013          s/S. Arthur Spiegel
                                 S. Arthur Spiegel
                                 United States Senior District Judge

16